IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DONALD CLARK WRIGHT, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| v. | ) | 1:21-CV-5197-MHC |
| | ) | |
| BRANDON WARREN and VICTOR HILL, | ) | |
| in their individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S COMPLAINT**

## I.     INTRODUCTION

This is a Section 1983 civil rights lawsuit filed by plaintiff Donald Clark
Wright, III ("plaintiff").  (Doc. 1.)  Plaintiff alleges that he was being pursued in a
vehicle by Clayton County Sheriff's Deputy Brandon Warren ("Deputy Warren")
when he ultimately collided his vehicle into a "sign."  (Id.) Plaintiff alleges that he
got out of the vehicle and fled on foot at which point Deputy Warren, who believed
that plaintiff was "holding a gun," shot plaintiff in the buttock. (Id.)  Based on the
foregoing, plaintiff now brings this action against Deputy Warren as well as Sheriff
Victor Hill ("Sheriff Hill") in their individual and official capacities.  (Id.)  Under
Section 1983, plaintiff alleges unlawful search and seizure claims under the Fourth
and Fourteenth Amendments.  (Id., p. 8.)  Plaintiff also asserts state law claims for

"unreasonable searches and seizures" and "abuse[] while being arrested" under the Georgia Constitution and a state law claim of battery. (Id., pp. 8-9.) Based on these claims, plaintiff seeks "all damages available under Federal and Georgia law." (Id., p. 9.)

Defendants now move to dismiss all of plaintiff's claims against them for three reasons. ***First***, plaintiff's claims against defendants in their official capacities are barred by (1) the Eleventh Amendment and (2) sovereign immunity. ***Second***, plaintiff's federal claims against defendants in their individual capacities are barred by qualified immunity. ***Finally***, plaintiff's state law claims against defendants in their individual capacities are barred by official immunity. For these reasons, plaintiff's complaint should be dismissed. [1]

## II.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Plaintiff's Claims Against Defendants In Their Official Capacities Are Subject To Dismissal

#### 1.   Eleventh Amendment Immunity

Plaintiff's Section 1983 and state law claims against defendants in their official capacities are barred by the Eleventh Amendment. "The Eleventh Amendment protects a State from being sued in federal court without the State's

---

[1] Hill has not been served with process, and therefore, the Court lacks personal jurisdiction. Hill specifically preserves these objections and reserves the right to file a Rule 12 motion asserting these defenses as grounds for dismissal after the 90-day time period to perfect service under Rule 4(m) expires on March 21, 2021.

consent." <u>Manders v. Lee</u>, 338 F.3d 1304, 1308 (11th Cir. 2003). "To receive
Eleventh Amendment immunity, a defendant need not be labeled a 'state officer'
or 'state official,' but instead need only be acting as an 'arm of the State,' which
includes agents and instrumentalities of the State." <u>Manders</u>, 338 F.3d at 1308.  In
turn, the Eleventh Amendment precludes a plaintiff from suing a sheriff when he
acts as an arm of the State.  <u>Purcell v. Toombs Cnty.</u>, 400 F.3d 1313, 1325 (11th
Cir. 2005). The same preclusion applies to a sheriff's employees sued in their
official capacity.  <u>Scott v. Mercier</u>, 268 F. App'x. 872, 873 (11th Cir. 2008);
<u>Scruggs v. Lee</u>, 256 F. App'x. 229, 231-232 (11th Cir. 2007).

 "Whether a defendant is an 'arm of the State' must be assessed in light of the
particular function in which the defendant was engaged."  <u>Manders</u>, 338 F.3d at
1308.  Courts look at four factors to determine whether an entity is an "arm of the
state": "(1) how state law defines the entity; (2) what degree of control the state
maintains over the entity; (3) where the entity derives its funds; and (4) who is
responsible for judgments against the entity." <u>Id.</u> at 1309.

 Here, plaintiff asserts claims against defendants in their official capacities.[2]
Plaintiff alleges that Sheriff Hill "is directly responsible for the daily management,

---

[2] Plaintiff's claims against Deputy Warren in his official capacity is also subject to
dismissal because they are redundant and are in essence claims against Sheriff Hill
who is already a named party.  Indeed, "[o]fficial-capacity suit[s] . . . 'generally
represent only another way of pleading an action against an entity of which an
officer is an agent.'" <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985).  As such,

administration, and operation of the Clayton County Sheriff's Office" and that he was involved in the "customs or policies" that led to the alleged constitutional violations in this case.  (Doc. 1, ¶ 3.)  Plaintiff criticizes the policies and customs of the Sheriff as well as his training of his deputies.  (Id., ¶¶ 26-29.)   All of plaintiff's claims implicate law enforcement functions where the Sheriff acts as an "arm of the state."  See, e.g., Manders, 338 F.3d at 1328 (holding that the sheriff acts as an arm of the state when training and disciplining deputies with regard to his use of force policy); Burgest Colquitt Cty., 177 F. App'x 852, 855 (11th Cir. 2005) (affirming the district court's holding that the sheriff and sheriff deputies were entitled to Eleventh Amendment immunity for claims based on plaintiff's arrest).   Accordingly, the Eleventh Amendment bars all of plaintiff's official capacity claims against defendants.

## 2.    Sovereign Immunity

Plaintiff has asserted state law claims against defendants in their official capacities.  The Georgia Constitution extends sovereign immunity "to the state and all of its departments and agencies."  Ga. Const. Art. I, § 2, ¶ IX(e).  Because counties are subdivisions of the state, they are entitled to this constitutional grant

---

"there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991); Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999) (a suit against a governmental official in her official capacity is deemed a suit against the entity that she represents).

of immunity. <u>Tittle v. Corso</u>, 256 Ga. App. 859, 863, 569 S.E.2d 873, 878 (2002); <u>Gilbert v. Richardson</u>, 264 Ga. 744, 744, 452 S.E.2d 476, 476 (1994).  It is well-settled that suits against "public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity."  <u>Cameron v. Lang</u>, 274 Ga. 122, 126, 549 S.E.2d 341, 346 (2001).

Georgia courts, moreover, have held that a sheriff and a sheriff's employees in their official capacities are entitled to raise the defense of sovereign immunity. <u>Seay v. Cleveland</u>, 270 Ga. 64, 65, 508 S.E.2d 159, 161 (1998) ("sovereign immunity acts as a bar to such claims against a sheriff in his official capacity unless sovereign immunity has been waived"); <u>Ankerich v. Savko</u>, 319 Ga. App. 250, 252, 734 S.E.2d 805, 807 (2012) (lawsuit against a deputy sheriff in her official capacity is considered a suit against the county, and the deputy sheriff is entitled to assert any defense or immunity that the county could assert, including sovereign immunity); <u>Soley v. Dodson</u>, 256 Ga. App. 770, 772, 569 S.E.2d 870, 873 (2002).

Only an Act of the General Assembly can operate to waive this entitlement to sovereign immunity, and it is the plaintiff's burden of establishing such a waiver.  O.C.G.A. § 36-1-4; <u>Spalding Cnty. v. Blanchard</u>, 275 Ga. App. 448, 448, 620 S.E.2d 659, 660 (2005); <u>McLemore v. City Council of Augusta</u>, 212 Ga. App. 862, 443 S.E.2d 405 (1994).  Here, sovereign immunity bars state law claims such

as those alleged by plaintiff against defendants in their official capacities unless plaintiff can establish that sovereign immunity has been waived. There is no legislative enactment in Georgia that waives sovereign immunity under the circumstances alleged in this case. Because plaintiff cannot meet his burden of establishing a waiver of sovereign immunity, plaintiff's state law claims against defendants in their official capacities are barred.

**B.**  **Federal Claims Against Defendants In Their Individual Capacities Are Barred By Qualified Immunity**

Qualified immunity "shields officers from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known." Mullenix v. Luna, 136 S.Ct. 305, 308 (2015). Significantly, the immunity is "from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 525 (1985). As such, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

To claim qualified immunity, defendants must first show that they were performing discretionary functions. Barnes v. Zaccari, 669 F.3d 1295, 1303 (11th Cir. 2012). Plaintiff alleges that Hill is the elected Sheriff of Clayton County and responsible for the management, administration, and operation of the Sheriff's Office at all times relevant to the complaint. (Doc. 1, ¶ 3.) Plaintiff alleges that Deputy Warren was a "deputy sheriff of Clayton County," and in that capacity and

while acting within the course and scope of his employment, allegedly violated plaintiff's constitutional rights.  (Id., ¶¶ 4, 8.) Therefore, there is no dispute that defendants were acting within their discretionary authority for purposes of qualified immunity.  Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).

Plaintiff, in turn, bears the burden of demonstrating that defendants are not entitled to qualified immunity.  Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004).  To meet his burden, plaintiff must show that: (1) each defendant violated his constitutional rights, and (2) each defendant's conduct was prohibited by clearly established law.  Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014).  As shown below, plaintiff cannot meet his burden on both of these prongs.  Therefore, defendants are entitled to qualified immunity.

### 1. No Underlying Constitutional Violation By Deputy Warren Because His Use Of Deadly Force Was Objectively Reasonable Under The Totality Of The Circumstances

"A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." Plumhoff, 134 S. Ct. at 2020; Graham v. Connor, 490 U.S. 386, 388 (1989). Reasonableness under the Fourth Amendment turns on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances

confronting them, without regard to their underlying intention or motivation." Graham, 490 U.S. at 397.

In determining whether the force utilized to effect a seizure was "objectively reasonable," courts look at a number of factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.  The Eleventh Circuit has held that an officer may constitutionally use deadly force when he: "(1) has probable cause to believe that the suspect poses a threat of serous physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible." McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009).

"In order to be entitled to qualified immunity, an officer need have only arguable probable cause to believe that the suspect poses a threat of serious physical injury, either to the officer or to others." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002); Clark v. City of Atlanta, Ga., 544 F. App'x 848, 856 (11th Cir. 2013) ("To be entitled to qualified immunity, 'an officer need only have arguable probable cause' to employ deadly force.").  The issue is not whether "probable cause existed but whether the officer reasonably believed it existed,

based upon the information he or she possessed at the time of the incident." <u>St. George</u>, 285 F.3d at 1337. Thus, even a "reasonable but mistaken belief that probable cause exists for using deadly force is not actionable under § 1983." <u>Carr v. Tatangelo</u>, 338 F.3d 1259, 1269 & n.19 (11th Cir. 2003).

As shown below, Deputy Warren's use of deadly force was objectively reasonable under the circumstances alleged in the complaint.

> ### *a.     Deputy Warren's Use Of Deadly Force Was Justified Based On His Belief That Plaintiff Had A Gun*

An officer's use of deadly force is reasonable where he has "probable cause to believe that his own life is in peril." <u>Robinson v. Arrugueta</u>, 415 F.3d 1252, 1253 (11th Cir. 2005) (finding that an officer's use of deadly force was reasonable where he has "probable cause to believe that his own life is in peril"); <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1246 (11th Cir. 2003) (finding deadly force authorized where the suspect poses "an imminent threat of danger to a police officer or others").

This standard acknowledges that a police officer rarely will have all of the information before he is compelled to act:

> In making an excessive force inquiry, we are not to view the matter as judges from the comfort and safety of our chambers, fearful of nothing more threatening than the occasional paper cut as we read a cold record accounting of what turned out to be the facts. **We must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and**

> **forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal.**

Crosby, 394 F.3d at 1333-34 (emphasis added).

Here, plaintiff alleges that he was being pursued in a vehicle by Deputy Warren when he ultimately collided his vehicle into a "sign." Plaintiff alleges that he got out of the vehicle and fled on foot at which point Deputy Warren shot plaintiff in the buttock. Deputy Warren's split-second decision to use deadly force was justified, because, as plaintiff admits, Deputy Warren believed that plaintiff was "holding a gun." While plaintiff alleges that he did not have a weapon in his possession when he was arrested and no weapon was recovered from the scene (Id., ¶¶ 18, 19), the law is clear that whether plaintiff actually had a gun in his hand has no bearing on whether Deputy Warren's shooting was justified. See, e.g., Wilson v. Miller, 650 F. App'x 676, 680 (11th Cir. 2016) ("That we know now that Wilson in fact had no weapon cannot and does not change our conclusion. The reasonableness of force used is not judged with 20/20 vision of hindsight."); Slattery v. Rizzo, 939 F.2d 213, 215 (4th Cir. 1991) (finding that the officer was justified in using deadly force when a suspect in the passenger seat of a stopped car repeatedly lowered his hands toward an object out of the officer's view, in violation of the officer's commands); Thomas v. Baldwin, No. 14-50161, 2014 WL 7235529, at *3

(5th Cir. Dec. 19, 2014) (although no weapon was found, officer observed suspect with something clenched in his hand).

Moreover, Deputy Warren was not required to wait until the moment plaintiff used the gun to act to stop him.  Montoute v. Carr, 114 F.3d 181, 185 (11th Cir. 1997) ("[A]n officer is not required to wait until an armed and dangerous felon has drawn a bead on the officer or others before using deadly force."). Accordingly, Deputy Warren had arguable probable cause, if not probable cause to believe that plaintiff posed a threat of harm, and his use of deadly force in turn was objectively reasonable.

### b.   Deputy Warren's Use Of Deadly Force Was Justified To Stop An Armed Fleeing Suspect

Additionally, Deputy Warren's use of deadly force was justified to stop plaintiff from continuing to flee with a gun after he collided his vehicle into a sign in a residential area.  "[A]n officer may use deadly force to stop a fleeing felony suspect when the officer: (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible." Johnson v. Niehus, 491 F. App'x 945, 952 (11th Cir. 2012); Pace v. Capobianco, 283 F.3d 1275, 1280 n.12 (11th Cir. 2002) ("[T]he threat of

danger to be assessed is not just the threat to officers at the moment, but also to the officers and other persons if the chase went on.").

Here, Deputy Warren was justified in using deadly force to prevent the escape of an armed fleeing felon under the rapidly evolving circumstances because he had probable cause, or at the very least arguable probable cause, to believe that plaintiff posed a threat of serious physical harm to others if he continued to flee. Plaintiff was fleeing from Deputy Warren in a vehicle and only stopped when his vehicle collided with a sign.  (Doc. 1, ¶¶ 7-9.)  It is axiomatic that a vehicle pursuit could cause serious physical harm to those involved as well as innocent bystanders, especially considering that plaintiff alleges that the pursuit ended at "5320 Phillips" in Clayton County, which under Google Maps, is a two lane road through a residential area near a church and elementary school.[3]  Plaintiff's act of fleeing from Deputy Warren  under these circumstances, moreover, rises to the level of a felony under O.C.G.A. § 40-6-395(b)(5)(A)(iii).

---

[3] Courts routinely take judicial notice of Google Maps. Am. Atheists, Inc. v. Levy Cty., No. 1:15cv113-MW/GRJ, 2017 U.S. Dist. LEXIS 198386, at *2 n.2 (N.D. Fla. Dec. 3, 2017); Permenter v. FedEx Freight, Inc., Civil Action No. 7:14-CV-104 (HL), 2016 U.S. Dist. LEXIS 28399, at *5 n.3 (M.D. Ga. Mar. 7, 2016); Pahls v. Thomas, 718 F.3d 1210, 1216 n. 1 (10th Cir. 2013) (taking judicial notice of Google Maps to illustrate the general location of events relevant to the litigation); McCormack v. Hiedeman, 694 F.3d 1004, 1008 n.1 (9th Cir. 2012) (taking judicial notice of Google Maps to determine the distance from an Idaho location to a Utah location).

The objective reasonableness analysis assesses the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" under the totality of circumstances, disregarding intent. Graham, 490 U.S. at 396.  Rather than surrender when he collided with the sign, plaintiff got out of the vehicle and fled on foot.  (Doc. 1, ¶ 12.)  According to the complaint allegations, Deputy Warren believed that plaintiff was armed with a gun.  (Id., 17.) From the perspective of a reasonable officer on the scene, had Deputy Warren not used deadly force to stop plaintiff, plaintiff would have continued to flee with a gun in his hand in a residential area, which further poses a danger to the public. Indeed, plaintiff does not allege that he stopped even after he was shot, but rather that he had to be "captured" in a nearby neighborhood by a "host of law enforcement officers." (Id., ¶ 18.) Under the totality of the circumstances, Deputy Warren was justified in using deadly force under the tense, uncertain, and rapidly evolving circumstances to stop an armed fleeing felon.  See Johnson, 491 Fed. App'x. at 945 (deputy sheriffs' use of deadly force on fleeing felon was objectively reasonable); Long v. Slaton, 508 F.3d 576, 579-81 (11th Cir. 2007) (use of deadly force on fleeing felony suspect justified where suspect was backing a stolen police car away from the officer at time of the shooting).

## 2.      No Constitutional Violation By Sheriff Hill

Plaintiff cannot maintain a Section 1983 claim against Sheriff Hill merely by pointing to the alleged actions of others.  Indeed, "[i]t is well-established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1180 (11th Cir. 2009).  Rather, a supervisor can only be held liable under Section 1983 when "the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007).  Absent an underlying constitutional violation by one of Sheriff Hill's employees, moreover, the Sheriff cannot be held liable under Section 1983.  Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009) (absent a violation of plaintiff's constitutional rights, sheriff and city entitled to summary judgment).

As shown above, because plaintiff's complaint fails to allege an underlying constitutional violation by Deputy Warren, plaintiff's Section 1983 claim against Sheriff Hill is subject to dismissal.  Even if plaintiff's complaint alleges facts sufficient to establish an underlying constitutional violation, which it does not, plaintiff's supervisory liability claim against the Sheriff is still subject to dismissal

because plaintiff does not allege facts to establish a causal connection between any actions of Sheriff Hill and any violation of plaintiff's constitutional rights.

The necessary causal connection can be established when: (1) a "history of widespread abuse" puts the supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.  Crosby, 480 F.3d at 1270.

First, plaintiff does not allege facts to show a "history of widespread abuse" in the context of deputy involved shootings which put Sheriff Hill on notice of a need to correct a known deficiency and that he failed to do so.  Plaintiff baldly alleges that Hill is "currently under indictment and faces federal criminal charges for routinely using excessive and unreasonable force against people in his custody." (Doc. 1, ¶ 27.)  However, plaintiff doesn't describe the allegations in the indictment whatsoever. (Id., ¶ 27.)   The pending indictment against the Sheriff, moreover, is inapposite because (1) it involves allegations relating to the use of restraint chairs at the Clayton County Jail and not deputy involved shootings; and (2) it has not resulted in a finding tht anyone's constitutional rights have been violated. See United States v. Victor Hill, 1:21-CR-143-ELR-CCB (US Dist. Ct.

NDGA).[4]    Therefore, the indictment cannot establish a "pattern of similar constitutional violations" for purposes of supervisory liability in this case. Watkins v. Willson, 824 F. App'x 938, 941 (11th Cir. 2020) ("a plaintiff ordinarily must show *a pattern of similar constitutional violations* by untrained employees because [w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.") (emphasis added).   See also Hawk v. Klaetsch, 522 Fed. Appx. 733 (11th Cir. 2013) ("We fail to see how three incidents over the span of nearly five years can constitute frequent, widespread, or rampant abuse.").

Second, plaintiff fails to allege sufficient facts to show that a custom or policy of Sheriff Hill resulted in a deliberate indifference to plaintiff's constitutional rights.  Plaintiff alleges that Sheriff Hill "has a policy or custom of using or encouraging excessive force" which was the "moving force being the violation" of plaintiff's rights.  (Doc. 1, ¶¶ 26, 29.)  However, plaintiff offers no factual allegations to corroborate these contentions, and these conclusory allegations are insufficient to state a claim.   See Smith v. Owens, No. 14-14039,

---

[4] The Court may take judicial notice of the indictment – a matter of public record — without converting defendants' motion into a motion for summary judgment. Plotkin v. United States, No. 5:08-cv-252-Oc-10GRJ, 2011 U.S. Dist. LEXIS 30689, at *3 n.2, 107 A.F.T.R.2d (RIA) 2011-1476 (M.D. Fla. Mar. 24, 2011); Universal Express, Inc. v. U.S. S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006).

2015 WL 4281241, at *3 (11th Cir. July 16, 2015) (finding conclusory allegation of improper custom resulting in deliberate indifference insufficient to state a claim); McClendon v. City of Sumiton, Ala., No. 2:14-CV-00150-AKK, 2015 WL 2354187, at *3 (N.D. Ala. May 15, 2015) ("[C]onclusory allegations are insufficient to support a claim…for deliberate indifference, ratification, or purported 'custom and policy liability.'").

Finally, plaintiff's bald allegation that Sheriff Hill failed to adequately train his deputies is insufficient to establish liability.  (Doc. 1, ¶¶ 28, 29.) Plaintiff fails to allege facts to establish a pattern of similar constitutional violations by untrained employees that placed the Sheriff on notice of the need for corrective measures. Young v. City of Augusta, Ga. Through DeVaney, 59 F.3d 1160, 1172 (11th Cir. 1995); Erickson v. Manatee Cty. Sheriff's Dep't, 824 F. App'x 861, 864 (11th Cir. 2020).  Additionally, plaintiff must allege facts to show that the Sheriff "knew of a need to train and/or supervise in a particular area and the municipality *made a deliberate choice not to take any action.*"  Gold v. City of Miami, 151 F.3d 1346, 1351 (11th Cir. 1998).  Here, there are no such allegations.

At best, plaintiff has alleged an "isolated occurrence" which is insufficient to show that Sheriff Hill had actual or constructive notice of a flagrant, persistent pattern of violations stemming from the use of deadly force or from any deficiencies in training.  Harris v. Goderick, 608 F. App'x 760, 763 (11th Cir.

2015) ("[A] single isolated incident is insufficient to establish a custom or policy under § 1983."); Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986) ("[R]andom acts or isolated incidents are insufficient to establish a custom or policy."); Hawk v. Klaetsch, 522 Fed. Appx. 733 (11th Cir. 2013) ("We fail to see how three incidents over the span of nearly five years can constitute frequent, widespread, or rampant abuse."); Braddy v. Florida Dep't of Labor & Employment Sec., 133 F.3d 797, 802 (11th Cir. 1998) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.").

Therefore, plaintiff's Section 1983 claim against Sheriff Hill is subject to dismissal for failure to state a claim.  See Faulkner v. Monroe Cnty. Sheriff's Dep't, 523 F. App'x 696, 701 (11th Cir. 2013) (finding that the plaintiff's claim based on the theory of supervisory liability was subject to dismissal because the plaintiff did not establish a causal connection between the defendant's actions and the alleged constitutional deprivation).

### 3.   No Violation of Clearly Established Law

Even if plaintiff's complaint alleges sufficient facts to establish a constitutional violation, defendants are still entitled to qualified immunity because they did not violate clearly established law.  "[T]he purpose of the qualified immunity doctrine is to give meaning to the proposition that '[g]overnment

officials are not required to err on the side of caution' when it comes to avoiding constitutional violations." See Crosby v. Monroe Cty., 394 F.3d 1328, 1334 (11th Cir. 2004).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335 (1986).  It is a plaintiff's burden to overcome qualified immunity by pointing to specific actions of an officer which violate clearly established law.  Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997) ("Once an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff."). "This burden is not easily discharged: That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." Jones v. Ward, 514 F. App'x 843, 846-47 (11th Cir. 2013).

The Eleventh Circuit has held "many times" that "if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).  A "plaintiff cannot rely on general, conclusory allegations or broad legal truisms to show that a right is clearly established." Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994); White v. Pauly, 137 S. Ct. 548, 552 (2017) (reiterating the longstanding principle that clearly established law should not be defined at a high level of generality and must be particularized to the facts of the case).  The law can

be clearly established for qualified immunity purposes only by decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court.  Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 823 n. 4 (11th Cir. 1997).

Here, plaintiff alleges that "using deadly force in this situation violated clearly established law."  (Doc. 1, ¶ 24.)  However, plaintiff fails to cite any controlling precedent particularized to the facts of this case that clearly establishes that Deputy Warren's deadly force to apprehend a fleeing felony suspect who he believed was armed and running through a residential area constitutes a clear violation of the constitution.  Nor would it have been obvious to every objectively reasonable government official confronted with the rapidly evolving circumstances facing Deputy Warren that his conduct violated federal law.  Because plaintiff cannot meet his burden of citing case law that would establish that defendants violated clearly established law, they are entitled to qualified immunity.

**C.   State Law Claims Against Defendants In Their Individual Capacities Are Barred By Official Immunity**

Plaintiff's state law claims must be dismissed because defendants are entitled to official immunity.  The doctrine of official immunity is enshrined in the Georgia Constitution.  Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d).  Under the doctrine, "while a public officer or employee may be personally liable for his negligent *ministerial acts*, he may not be held liable for his *discretionary acts*

unless such acts are willful, wanton, or outside the scope of his authority." <u>Gilbert</u> <u>v. Richardson</u>, 264 Ga. 744, 752, 452 S.E.2d 476, 482 (1994) (citation omitted) (emphasis added); <u>see</u> <u>Murphy v. Bajjani</u>, 282 Ga. 197, 198, 647 S.E.2d 54, 65-57 (2007).  In other words, "a public officer or employee may be personally liable only for ministerial acts negligently performed or [discretionary] acts performed with malice or an intent to injure." <u>Golden v. Vickery</u>, 285 Ga. App. 216, 217, 645 S.E.2d 695, 696 (2007).

This immunity protects government employees' ability to act upon their judgment and discretion in the performance of their duties.  <u>See</u> <u>Cameron</u>, 274 Ga. at 123, 549 S.E.2d at 344.  Whether a defendant is entitled to official immunity is a question of law that must be decided by the court as a "threshold issue." <u>Id.</u> at 124, 549 S.E.2d at 345.  As discussed below, because defendants were at all times performing discretionary acts without actual malice or actual intent to cause injury, they are each entitled to official immunity.

### 1.    Sheriff Hill Was Performing Discretionary Functions

It is clear that all of plaintiff's allegations against Sheriff Hill concern discretionary functions.  Plaintiff does not allege that Sheriff Hill was personally involved with Deputy Warren's encounter with plaintiff or that Sheriff Hill personally harmed plaintiff.  (Doc. 1.)  Instead, plaintiff is targeting the Sheriff based on his responsibility in the "management, administration, and operation of

the Clayton County Sheriff's Office" and his involvement in the "customs or policies" of the Sheriff's Office. (Id., ¶ 3.)  In that regard, plaintiff alleges that Sheriff Hill's "policy or custom" and his failure to adequately train his deputies led to the violation of plaintiff's rights.  (Id., ¶¶ 26-29.)

It is well-settled, however, that these functions are discretionary in nature. "Employment decisions, including the retention, hiring and supervision of employees, necessarily require consideration of numerous factors and the exercise of deliberation and judgment. They are therefore precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing." Doss v. City of Savannah, 290 Ga. App. 670, 675, 660 S.E.2d 457, 462 (2008).[5]

## 2.    Deputy Warren Was Performing Discretionary Functions

Plaintiff's claims against Deputy Warren stem from his use of deadly force. (Id., ¶ 23.)  Georgia courts have consistently held, however, that decisions to use force are discretionary in nature.  See, e.g., Williams v. Boehrer, 530 F. App'x 891,

---

[5] Russell v. Barrett, 296 Ga. App. 114, 120, 673 S.E.2d 623, 629 (2009) (finding that Sheriff was entitled to official immunity, recognizing that the operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function); Lowe v. Jones Cnty., 231 Ga. App. 372, 373, 499 S.E.2d 348, 350 (1998) ("The operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function.").

896 (11th Cir. 2013) (finding that for purposes of official immunity that use of force is a discretionary act).[6]

### 3.     No Actual Malice Or Actual Intent To Injure

Having established that defendants were at all times performing discretionary functions, they are each entitled to official immunity unless plaintiff can show that they each acted with "actual malice [which] requires a deliberate intention to do wrong and denotes express malice or malice in fact." Adams v. Hazelwood, 271 Ga. 414, 414-15, 520 S.E.2d 896, 898 (1999); Griswold v. Collins, 318 Ga. App. 556, 558, 734 S.E.2d 425, 427 (2012) ("actual malice requires a showing that the actor had a deliberate intention to do wrong…and that [w]illful conduct is based on an actual intention to do harm or inflict injury"). "[T]he actual malice necessary to overcome official immunity *must be the intent to cause the harm suffered by the plaintiff*." Campbell v. Goode, 304 Ga. App. 47, 49, 695 S.E.2d 44, 46 (2010) (emphasis added).

Here, nowhere in plaintiff's complaint does he allege any facts to show that defendants, each, acted with actual malice or the actual intent to cause plaintiff injury.  (Doc. 1.)  There are no allegations in the complaint that either defendant

---

[6] Russell v. Barrett, 296 Ga. App. 114, 118, 673 S.E.2d 623, 627 (2009) holding that deciding to pursue a subject and using force is discretionary); Kidd v. Coates, 271 Ga. 33, 33, 518 S.E.2d 124, 125 (1999) (an officer's conduct of firing a gun at a suspect while executing a search warrant is deemed discretionary).

intended the harm suffered by plaintiff.  Plaintiff's state law claims, therefore, must be dismissed based on official immunity.

## D.   __Punitive Damages And Attorney's Fees Claims Subject To Dismissal__

Plaintiff seeks "all damages available under Federal and Georgia law." (Doc. 1, prayer for relief.)  To the extent plaintiff is seeking an award of punitive damages and attorney's fees against defendants, these claims are subject to dismissal for three reasons.

First, defendants in their official capacities are immune from punitive damages.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 259-60 (1981); Metro. Atlanta Rapid Transit Auth. v. Boswell, 261 Ga. 427, 428, 405 S.E.2d 869, 870 (1991); City of Columbus v. Myszka, 246 Ga. 571, 573, 272 S.E.2d 302, 303 (1980).

Second, because plaintiff's underlying claims are subject to dismissal, any claims for attorney's fees and punitive damages are subject to dismissal as well. See J. Andrew Lunsford Properties, LLC v. Davis, 257 Ga. App. 720, 722, 572 S.E.2d 682, 685 (2002) ("[T]he claims seeking attorney fees and punitive damages were properly dismissed as derivative of the other dismissed claims."); OFS Fitel, LLC v. Epstein, Becker & Green, P.C., 549 F.3d 1344, 1357 (11th Cir. 2008) (finding that plaintiffs' claims for punitive damages and attorney's fees cannot survive without an underlying claim against defendants).

Finally, there are no factual allegations in the complaint of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences" or bad faith or stubborn litigiousness to justify an award of punitive damages or attorney's fees under Georgia law.  See O.C.G.A. § 15-12-5.1.  Nor are there any factual allegations of "malice" or "reckless indifference" to plaintiff's federally protected rights that would justify an award of punitive damages against defendants under federal law. See Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999) (stating that "malice or . . . reckless indifference to the [plaintiff's] federally protected rights" justifies an award of punitive damages under Section 1983); Reynolds v. CSX Transportation, Inc., 115 F.3d 860, 869 (11th Cir. 1997). Therefore, defendants are entitled to dismissal of any claims for punitive damages and attorney's fees.

### III.   CONCLUSION

As shown above, plaintiff's complaint should be dismissed.

**FREEMAN MATHIS & GARY, LLP**

/s/ A. Ali Sabzevari
Jack R. Hancock
Georgia Bar No. 322450
jhancock@fmglaw.com
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

- 25 -

661 Forest Parkway, Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

Attorneys for Defendants

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to Local Rule 7.1(D), that the foregoing memorandum of law has been prepared in accordance with Local Rule 5.1(C) (Times New Roman font, 14 point).

This 13th day of January, 2022.

**FREEMAN MATHIS & GARY, LLP**

*/s/ A. Ali Sabzevari*
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

661 Forest Parkway, Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION**

**TO DISMISS PLAINTIFF'S COMPLAINT** to the Clerk of Court using the

CM/ECF system which will automatically send electronic mail notification of such

filing to counsel of record who are CM/ECF participants:

William S. Cowsert
Joseph D. Stephens
Cowsert Heath, LLP
P.O. Box 627
Athens, Georgia 30603

This 13th day of January, 2022.

**FREEMAN MATHIS & GARY, LLP**

*/s/ A. Ali Sabzevari*
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

661 Forest Parkway, Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)