IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONALD CLARK WRIGHT, III, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BRANDON WARREN and VICTOR HILL,)<br>in their individual and official capacities, )<br>)<br>Defendants. )<br>) | CIVIL ACTION FILE NO.:<br>1:21-CV-5197-MHC |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**I.     ARGUMENT AND CITATION OF AUTHORITY**

**A.    Plaintiff's Claims Against Defendants In Their Official Capacities Are Subject To Dismissal**

**1.     Eleventh Amendment Immunity**

In their initial brief, defendants established that plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment. (Doc. 5-1, pp. 2-4.)  In response, plaintiff invites the Court to commit error and disregard binding law in the Eleventh Circuit. (Doc. 8, p. 5.)  Plaintiff cites to Judge Rosenbaum's concurring opinion in Andrews v. Biggers, 996 F.3d 1235, 1235 (11th Cir. 2021) and her concern that the role of Georgia's sheriffs and their deputies as "arms of the state" should be reconsidered. (Id.)  However, Judge

Rosenbaum's concurring opinion is not binding and the Court is not in a position to disregard the precedent cited in defendants' initial brief, which plaintiff neglects to address.  (Doc. 5-1, p. 4.)  Additionally, the Eleventh Circuit in Andrews actually affirmed the district court's grant of Eleventh Amendment immunity as to claims against a deputy in his official capacity and expressly rejected efforts, like plaintiff's efforts here, to overrule Purcell ex rel. Estate of Morgan v. Toombs Cnty., 400 F.3d 1313 (11th Cir. 2005) or revisit the factors in Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003).[1]

Applying the Manders factors, which the Court is bound to do, numerous courts have found that sheriffs and their deputies serve as "arms of the state" when engaging in law enforcement functions.  See Townsend v. Coffee Cnty., 854 F. Supp. 2d 1345, 1352 (S.D. Ga. 2011) (finding that a deputy sheriff "was acting as an 'arm of the state'" while making an investigatory stop and arrest); Hall v. Fries, No. 7:13-CV-105 (HL), 2014 U.S. Dist. LEXIS 48679, 2014 WL 1389063, at *5 (M.D. Ga. Apr. 9, 2014) (finding that sheriff and deputy served as arms of the state during fatal shooting of suspect); McDaniel v. Yearwood, No. 2:11-CV-00165-RWS, 2012 WL 526078, at *7 (N.D. Ga. Feb. 16, 2012) (concluding that "the

---

[1] Manders and its progeny dictate that where a sheriff and his deputies are performing their official and authorized duties as state actors—i.e. engaged in general law enforcement functions or making arrests pursuant to state law—they are entitled to Eleventh Amendment immunity from a § 1983 claim against them in their official capacities.  Frederick v. Brown, No. CV 113-176, 2015 WL 4756765, at *14 (S.D. Ga. Aug. 10, 2015).

deputies were acting as state actors when they arrested Plaintiff"); Stanton v. McIntosh Cnty., No. CV 209-092, 2010 WL 11526845, at *4 (S.D. Ga. Sept. 29, 2010) (finding that a sheriff was acting as an arm of the state when "applying for and obtaining arrest warrants").

Here, plaintiff asserts federal claims against defendants in their official capacity stemming from Deputy Warren's law enforcement functions in attempting to apprehend a fleeing suspect and subsequent use of deadly force. Plaintiff's claims implicate law enforcement functions where the Sheriff – and consequently his employees in their official capacity – acts as an "arm of the state." Beaulah v. Muscogee Cnty. Sheriff's Deputies, 447 F. Supp. 2d 1342, 1356-57 (M.D. Ga. 2006) ("[T]he Eleventh Circuit found that 'counties exercise no authority or control over the sheriff's force policy, whether in making arrests on the streets or in quelling disruptive inmates at the jail.'"). Therefore, the Eleventh Amendment bars plaintiff's federal official capacity claims against defendants.

### 2. Sovereign Immunity

In their initial brief, defendants established that plaintiff's state law claims against them in their official capacities are barred by sovereign immunity and that there is no legislative enactment in Georgia that waives this immunity under the circumstances alleged in this case. (Doc. 5-1, pp. 4-6.)

In response, plaintiff contends that he "must necessarily have" a cause of action against defendants in their official capacities to vindicate his rights under the Georgia constitution to be free from unreasonable search and seizure and free from abuse while being arrested. (Doc. 8, pp. 6-7.) Plaintiff cites to State Bd. of Educ. v. Drury, 263 Ga. 429, 429, 437 S.E.2d 290, 291 (1993), Glover v. Donaldson, 243 Ga. 479, 479, 254 S.E.2d 857, 858 (1979), and Smith v. Floyd Cty., 85 Ga. 420, 422, 11 S.E. 850, 850 (1890). (Doc. 8, p. 7.) However, none of these cases supports a waiver of sovereign immunity as to plaintiff's claims in this case and they are factually distinguishable.

Drury is a case where teachers filed suit against a board of education and board members individually alleging violations of federal and state constitutional rights when they were denied teaching certificates. 263 Ga. at 430, 437 S.E.2d at 292. In an effort to waive the board's sovereign immunity, the teachers claimed they were entitled to recover damages pursuant to the eminent domain provision of the constitution. 263 Ga. at 430, 437 S.E.2d at 292. In Smith, a case from the 1800's, a plaintiff brought an action against a county for damages to his lot caused by the building of a bridge and, similar to Drury, involved county liability under the eminent domain provision for the damages to the plaintiff's property. 85 Ga. at 422, 11 S.E. at 850. Finally, Glover involves a suit against MARTA (Metropolitan

Atlanta Rapid Transit Authority) and the interpretation of the MARTA Act and the Georgia constitution for venue purposes.  243 Ga. at 482, 254 S.E.2d at 860.

Drury, Smith, and Glover have no applicability here whatsoever.  None of these cases involve claims remotely similar to the claims at issue in this case.  Plaintiff does not cite a single case that supports his contention that either Ga. Const. Art. I, § I, Para. XIII or Ga. Const. Art. I, § I, Para. XVII operate to waive a county's entitlement to sovereign immunity.  Plaintiff fails to meet his burden to cite any *legislative enactment* which operates to waive the county's entitlement to sovereign immunity.  City of Albany v. Dougherty Cty., 352 Ga. App. 664, 667, 835 S.E.2d 681, 684 (2019)  ("Sovereign immunity is not an affirmative defense, and the party seeking to establish that it has been waived bears the burden of doing so.").  Therefore, plaintiff's state law claims against defendants in their official capacities are subject to dismissal based on sovereign immunity.[2]

---

[2] See, e.g., Neal v. DeKalb Cnty., No. 1:16-cv-184-WSD, 2016 U.S. Dist. LEXIS 83241, at *3-4 (N.D. Ga. June 27, 2016) (finding that the plaintiff's state law claims of false imprisonment, false arrest, malicious prosecution, violation of Georgia Constitution, Article I, Section I, Para. V, violation of Georgia Constitution, Art. I, Section I, Para. XIII, and violation of Georgia Constitution, Art I, Section I, Para. I barred by sovereign immunity); Bashir v. Rockdale Cty., No. 1:03-CV-2933-CAP, 2005 U.S. Dist. LEXIS 47646, at *33-34 (N.D. Ga. Mar. 11, 2005) (finding that the plaintiff's state law claims for arrest without probable cause, abuse while being arrested, assault and battery, intentional infliction of emotional distress, false reports, use of force, conspiracy to commit a crime against others, false imprisonment, violation of oath of office, false writing, false report of crime, and influencing witnesses barred by sovereign immunity).

**B.      Federal Claims Against Warren And Hill In Their Individual Capacities Are Barred By Qualified Immunity**

**1.      No Underlying Constitutional Violation By Deputy Warren Because His Use Of Deadly Force Was Objectively Reasonable Under The Totality Of The Circumstances**

In their initial brief, defendants established that they are entitled to qualified immunity because Deputy Warren's use of deadly force was objectively reasonable under the circumstances alleged in the complaint. (Doc. 5-1, pp. 6-13.)

In his response, plaintiff contends that Deputy Warren's use of deadly force violated plaintiff's constitutional rights because he was unarmed, running away, did not pose a threat of injury to anyone, and was shot from behind. (Doc. 8, p. 4.) However, whether plaintiff was <u>actually</u> unarmed has no impact on the whether Deputy Warren's use of deadly force was justified. <u>See, e.g.</u>, <u>Wilson v. Miller</u>, 650 F. App'x 676, 680 (11th Cir. 2016) ("That we know now that Wilson in fact had no weapon cannot and does not change our conclusion. The reasonableness of force used is not judged with 20/20 vision of hindsight."). Likewise, the fact that plaintiff was fleeing does not mean that Deputy Warren was prohibited from using deadly force. <u>Johnson v. Niehus</u>, 491 F. App'x 945, 952 (11th Cir. 2012).

As for plaintiff's contention that he did not pose a threat of injury to anyone, plaintiff misunderstands the standard of liability and disregards his own allegations in the complaint. The standard requires the Court to evaluate the circumstances from Deputy Warren's perspective, not plaintiff's, and to determine whether

Deputy Warren had "*probable cause to believe* that the suspect poses a threat of serious physical harm, either to the officer or to others." Johnson, 491 F. App'x at 952 (emphasis added). Penley v. Eslinger, 605 F.3d 843, 852 (11th Cir. 2010) (use of force must be analyzed from the perspective of "a reasonable officer possessing the same particularized information as the subject officer").

According to the allegations in the complaint, plaintiff was fleeing in a residential area near a church and elementary school and Deputy Warren "claim[ed] that plaintiff was holding a gun." (Doc. 1, ¶¶ 7, 9, 17.) Under these allegations, Deputy Warren's use of deadly force was justified to prevent the escape of an armed fleeing felon. (Doc. 5-1, pp. 6-13.) Finally, the fact that plaintiff was shot from behind does not render the use of deadly force unconstitutional, either. Johnson v. Niehus, 491 Fed. Appx. 945, 946 (11th Cir. 2012) (deputy sheriffs' use of deadly force on fleeing felon was objectively reasonable); Long v. Slaton, 508 F.3d 576, 586 (11th Cir. 2007) (use of deadly force on fleeing felony suspect justified); Nicarry v. Cannady, 260 F. App'x 166 (11th Cir. 2007).³

---

³ In Nicarry, the plaintiff did not pull over for a traffic stop and instead led one of the defendant-police officers in a pursuit over two highways and into a residential neighborhood, where the plaintiff then fled on foot. Id. at 167. Several other officers joined the pursuit, as the officer followed the plaintiff into a backyard and over several fences. Id. After hiding in a shed, and ignoring repeated commands to come out, the plaintiff grabbed a screwdriver and leaped out of the shed. Id. at 168-69. Believing the officers were in danger, the officers shot the plaintiff in his back,

In sum, Deputy Warren was justified in using deadly force to prevent the escape of a fleeing felon who he believed was holding a gun. Deputy Warren had probable cause to believe that plaintiff posed a threat of serious physical harm to others if he continued to flee in the residential area. Accordingly, Deputy Warren is entitled to qualified immunity.

### 2. No Constitutional Violation By Sheriff Hill

In their initial brief, defendants established that Sheriff Hill is entitled to qualified immunity because plaintiff's complaint fails to allege an underlying constitutional violation by Deputy Warren and plaintiff otherwise fails to allege sufficient facts to establish a "causal connection" for purposes of supervisory liability. (Doc. 5-1, pp. 14-18.)

In response, plaintiff contends that a criminal indictment against Sheriff Hill in U.S. v. Victor Hill, NDGA Case 1:21-cr-00143-ELR-CCB is sufficient to allege a policy or custom of encouraging excessive force. (Doc. 8, pp. 7-8.) However, as set forth in the Sheriff's initial brief, none of the incidents alleged in the criminal indictment have resulted in any finding that anyone's constitutional rights have been violated. Plaintiff does not cite to any law to support his contention that

---

head, and leg. Id. at 169. The Eleventh Circuit affirmed summary judgment in favor of the defendant officers because it found it objectively reasonable for the officers to believe that the plaintiff posed a threat of immediate physical harm, given his refusal to pull over, fleeing from officers both in his car and on foot, and the fact that the episode lasted only a few seconds after the plaintiff was ordered to come out of the shed for a second time. Id. at 170.

accusations in an indictment are sufficient to establish a causal connection or history of widespread abuse. Moreover, the accusations in the criminal indictment relate to the use of a restraint chair at the Clayton County Jail and have nothing to do with the use of deadly force in the field.

Because the indictment has not resulted in any finding or determination that anyone's constitutional rights have been violated, and none of the incidents alleged in the indictment involve the use of deadly force by a deputy in the field, the indictment is insufficient to establish a "pattern of similar constitutional violations." See, e.g., Watkins v. Wilson, 824 F. App'x 938, 941 (11th Cir. 2020) ("a plaintiff ordinarily must show ***a pattern of similar constitutional violations*** by untrained employees because [w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.") (emphasis added). See also Hawk v. Klaetsch, 522 Fed. Appx. 733 (11th Cir. 2013) ("We fail to see how three incidents over the span of nearly five years can constitute frequent, widespread, or rampant abuse.").[4]

Therefore, at best, plaintiff has alleged an "isolated occurrence" which is insufficient to establish a custom or policy for purposes of supervisory liability.

---

[4] Plaintiff doesn't address the Sheriff's arguments or the cases Watkins and Hawk cited in his initial brief.

Harris v. Goderick, 608 F. App'x 760, 763 (11th Cir. 2015) ("[A] single isolated incident is insufficient to establish a custom or policy under § 1983.").

### 3. No Violation of Clearly Established Law

Finally, defendants established in their initial brief that they are entitled to qualified immunity because they did not violate clearly established law. (Doc. 5-1, pp. 18-20.) It is the plaintiff's burden to overcome qualified immunity by establishing a violation of clearly established law. Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997). In 2017, the Supreme Court observed:

> Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined at a high level of generality. As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

White v. Pauly, 137 S. Ct. 548, 552 (2017). The Eleventh Circuit recently repeated this important principle in Gaines v. Wardynski, 871 F.3d 1203, 1207 (11th Cir. 2017), wherein the Eleventh Circuit reversed a district court for defining "clearly established law" at too high a level of generality.

In an attempt to meet his burden, plaintiff contends that Deputy Warren's use of deadly force violated clearly established law and cites to Tennessee v. Garner, 471 U.S. 1, 3, 105 S. Ct. 1694, 1697 (1985). (Doc. 8, p. 4.) However, plaintiff blatantly disregards White, wherein the Supreme Court explained that

federal courts that have relied on Garner, instead of identifying a prior case with similar circumstances, have "misunderstood" the "clearly established" analysis. White, 137 S. Ct. at 552.  Plumhoff v. Rickard, 572 U.S. 765, 134 S. Ct. 2012, 2023 (2014) (emphasizing that Garner and Graham "are 'cast at a high level of generality'").  Garner cannot clearly establish the law for purposes of qualified immunity in this case.

Plaintiff also cites to Bradley v. Benton, 29 Fla. L. Weekly Fed. C 282 (U.S. 11th Cir. 2021) and Cantu v. City of Dothan, 974 F.3d 1217, 1221 (11th Cir. 2020). (Doc. 1, ¶ 7.)  Neither Bradley nor Cantu can clearly establish the law as to Deputy Warren's conduct in this case because they were decided after the subject incident on December 24, 2019.  West v. Davis, 601 F. App'x 929, 930 (11th Cir. 2015) (affirming district court's grant of qualified immunity and finding that the cases cited by the plaintiff "were decided after the event in question took place."). Even if Bradley and Cantu can be considered for purposes of the instant qualified immunity analysis, these cases as well as Mercado v. City of Orlando, 407 F.3d 1152, 1154 (11th Cir. 2005) and Samples ex rel Samples v. Atlanta, 846 F.2d 1328, 1329 (11th Cir. 1988), which are also cited in plaintiff's response, are distinguishable from the facts of this case. (Doc. 8, p. 4.)  None of these cases involve the use of deadly force to stop a fleeing felony suspect, who an officer believed was holding a gun, and who was fleeing in a residential area near a church

and elementary school. Plaintiff does not cite a single case that clearly establishes that Deputy Warren's use of deadly force under these circumstances constitutes a violation of a clearly established right. Because plaintiff fails to meet his burden by citing controlling and materially similar case law that would establish a violation of clearly established law, defendants are entitled to qualified immunity.

C. **State Law Claims Against Defendants In Their Individual Capacities Are Barred By Official Immunity**

Defendants established in their initial brief that plaintiff's state law claims against them in their individual capacity are barred official immunity, because defendants were at all times performing discretionary acts without actual malice or actual intent to cause injury. (Doc. 5-1, pp. 20-24.) Plaintiff's response fails to address Sheriff Hill's entitlement to official immunity or identify any factual allegations in the complaint which establish that Sheriff Hill acted with actual malice. (Doc. 8, p. 5.) Thus, Sheriff Hill is entitled to official immunity from plaintiff's state law claims.[5]

---

[5] Gore v. Jacobs Eng'g Grp., 706 F. App'x 981, 986 (11th Cir. 2017) ("failure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); Hooper v. City of Montgomery, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (concluding that a plaintiff's failure to respond to claims in a defendant's motion to dismiss resulted in dismissal of those claims as abandoned); Kramer v. Gwinnett County, Ga., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.") (emphasis added); Hudson v. Norfolk Southern Ry. Co., 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) (providing that "[w]hen a party fails to

As for Deputy Warren, plaintiff does not dispute that he was performing discretionary acts, but contends that he is not entitled to official immunity because plaintiff "posed no threat" to Deputy Warren when he shot him, and therefore, it can be inferred that he acted with "the actual intent to harm" plaintiff. (Doc. 8, p. 5.) Foremost, whether plaintiff posed a threat to Deputy Warren is not the standard in Georgia for using deadly force. A law enforcement officer in Georgia is justified in using deadly force in any of the following three circumstances:

> [A law enforcement officer] may use deadly force to apprehend a suspected felon only when the officer reasonably believes that the suspect possesses a deadly weapon or any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; when the officer reasonably believes that the suspect poses an immediate threat of physical violence to the officer or others; **or** when there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm.

O.C.G.A. § 17-4-20(b). See Williams v. Boehrer, 530 F. App'x 891, 897 (11th Cir. 2013). "[O]ur task is not to decide, with the benefit of hindsight, what [the officers] should have done. We are concerned only with whether [their] behavior showed a deliberate intention to commit a wrongful act." Selvy v. Morrison, 292 Ga. App. 702, 706, 665 S.E.2d 401, 406 (2008). The Supreme Court of Georgia

---

respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned"); cf. LR 7.1B ("Failure to file a response shall indicate that there is no opposition to the motion.").

has held that if the officer shot "intentionally and without justification, then [he] acted solely with the tortious actual intent to cause injury" and would not be protected by official immunity.  Porter v. Massarelli, 303 Ga. App. 91, 96, 692 S.E.2d 722, 726 (2010).

Here, plaintiff alleges that he was being pursued in a vehicle by Deputy Warren when he collided his vehicle into a "sign" at an address, which according to Google Maps, is in a residential area near a church and elementary school. (Doc. 1, ¶¶ 7, 9.)  Plaintiff alleges that he got out of the vehicle and fled on foot at which point Deputy Warren shot plaintiff in the buttock and captured him in a nearby neighborhood. (Id., ¶¶ 12, 14-16, 18.)  Plaintiff further alleges that "Warren claims Plaintiff Wright was holding a gun."  (Id., ¶ 17.) Based on these allegations, Deputy Warren's use of deadly force was justified under O.C.G.A. § 17-4-20(b) to apprehend a suspected felon whom the officer reasonably believed was in possession of a deadly weapon.  Additionally, because Deputy Warren believed plaintiff was holding a gun, and because plaintiff was fleeing in a residential area, Deputy Warren's use of deadly force was also justified because it would have been reasonable for Deputy Warren to believe that plaintiff posed an immediate threat of physical violence to the deputy or others.

Therefore, because Deputy Warren's shooting was justified under Georgia law, he was not acting with actual malice and is entitled to official immunity. See

<u>Williams</u>, 530 F. App'x at 897 (revering district court's denial of official immunity where deputies were justified in their use of force under O.C.G.A. § 17-4-20(b)).

**D.      <u>Punitive Damages And Attorney's Fees Claims Subject To Dismissal</u>**

Finally, defendants established that plaintiff's claims for punitive damages and attorney's fees are subject to dismissal because defendants in their official capacities are immune from punitive damages, plaintiff's underlying claims are subject to dismissal, and there are no factual allegations in the complaint to support any such claims.  (Doc. 5-1, pp. 24-25.)  Plaintiff offers no opposition.  (Doc. 8.)  Therefore, this Court should dismiss these claims as abandoned.  <u>Gore</u>, 706 F. App'x at 986; <u>Kramer</u>, 306 F. Supp. 2d at 1221; <u>cf.</u> LR 7.1B.

## II.      <u>CONCLUSION</u>

As shown above, as well as in defendants' initial brief, plaintiff's complaint should be dismissed.

                                      **FREEMAN MATHIS & GARY, LLP**

                                      <u>/s/ A. Ali Sabzevari</u>
                                      Jack R. Hancock
                                      Georgia Bar No. 322450
                                      jhancock@fmglaw.com
                                      A. Ali Sabzevari
                                      Georgia Bar No. 941527
                                      asabzevari@fmglaw.com

661 Forest Parkway, Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)

(404) 361-3223 (facsimile)

                              Attorneys for Defendants

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Local Rule 7.1(D), that the foregoing memorandum of law has been prepared in accordance with Local Rule 5.1(C) (Times New Roman font, 14 point).

This 10th day of February, 2022.

                                         **FREEMAN MATHIS & GARY, LLP**

                                         */s/ A. Ali Sabzevari*
                                         A. Ali Sabzevari
                                         Georgia Bar No. 941527
                                         asabzevari@fmglaw.com

661 Forest Parkway, Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

# CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants:

> William S. Cowsert
> Joseph D. Stephens
> Cowsert Heath, LLP
> P.O. Box 627
> Athens, Georgia 30603

This 10th day of February, 2022.

**FREEMAN MATHIS & GARY, LLP**

*/s/ A. Ali Sabzevari*
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

661 Forest Parkway, Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)